**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

**UNITED STATES OF AMERICA,**

       *Plaintiff,*

v.                                 **Case No. 25-20071-HLT-2**

**VICKI ROBINSON,**

       *Defendant.*

---

### SENTENCING MEMORANDUM

---

Vicki Robinson does not seek to escape the consequences of what she did. She betrayed the public's trust and stole money. Not once. Not twice. But several times. There is no excuse for what she did. Ms. Robinson is not trying to minimize or rationalize her crimes with anything argued below. She is guilty, ashamed, and contrite.

The advisory range of 27 to 33 months reflects neither the details of the offense nor Ms. Robinson's part in it. She did not devise this scheme. Julia Roberts was her supervisor and closest friend of more than thirty years. Roberts recruited her into the scheme. Roberts taught her how it worked. And, unsurprisingly, Roberts accounts for most of the loss.

Ms. Robinson has accepted full responsibility. She is a 63-year-old, first-time offender. She makes two requests. First, she asks the Court to vary from the Guidelines range to a custodial sentence below it — the exact length of that sentence she leaves to the Court. Second, and in the alternative, should the Court conclude (as Roberts urges on her own behalf) that the § 3553(a) factors permit a non-custodial sentence, then Ms. Robinson asks for a term of probation with a condition of home confinement. Ms. Robinson makes this alternative request to avoid an unwarranted sentencing disparity.

## I.      The advisory Guideline range.

Ms. Robinson does not contest the calculation in the presentence report. She agrees that the advisory range is 27 to 33 months. PSR ¶¶ 44–53, 81. But as the Court knows, that range is the starting point, not the finish line. *See United States v. Booker*, 543 U.S. 220, 245 (2004) (holding that the Guidelines are an advisory factor). It is but one of the many factors that the Court must consider before it imposes a sentence no greater than necessary to serve Congress' purposes in sentencing. As shown below, the factors that matter most here are Ms. Robinson's limited role relative to her codefendant, her history and characteristics, and her immediate acceptance of responsibility. Those factors call for a sentence below that range.

II.   **Ms. Robinson's limited role and the disparity with her codefendant. § 3553(a)(6).**

The most important fact in this case is that Ms. Robinson was the junior participant in a scheme that someone else built. Sentencing her as though she were its architect — or even its equal — would create the very disparity § 3553(a)(6) seeks to prevent.

This scheme was not Ms. Robinson's idea. Her supervisor, Roberts, conceived it roughly five years before she retired. Roberts then brought it to Ms. Robinson, teaching her how to generate the checks that concealed the missing cash. PSR ¶¶ 34–36. While the two acted together, the loss was overwhelmingly caused by Roberts: of the $979,962.15 total, she generated $816,022.29 (roughly 83%) and the two highest-loss years, (2018 and 2019). PSR ¶¶ 27–28. Ms. Robinson's own gain was modest: her bank records reflect cash deposits totaling roughly $19,283 over the relevant years, compared to Roberts's $85,630 in deposits and $186,000 in gambling losses. PSR ¶¶ 29-32. Ms. Robinson did not fund a lifestyle with this money and did not meaningfully enrich herself — distinguishing her from the offender who treats embezzled funds as a second income.

These facts matter because the single factor driving the advisory range is the loss enhancement: Fourteen levels, more than the base

offense and every other adjustment combined. Ms. Robinson accepts the agreed loss of $979,962.15 and her joint accountability for it. But the loss figure measures the size of the scheme, not her role in it, not her gain from it, not her culpability for it. Courts have long recognized that the § 2B1.1 loss table can overstate the seriousness of a particular defendant's conduct. *See* U.S.S.G. § 2B1.1 cmt. n.21(C); *see also United States v. Smart*, 518 F.3d 800, 802–08 (10th Cir. 2008) (affirming downward variance where the district court concluded the advisory range overstated the seriousness of the offense); *United States v. Emmenegger*, 329 F. Supp. 2d 416, 427–28 (S.D.N.Y. 2004) (Lynch, J.) (recognizing that "the amount stolen is a relatively weak indicator of the moral seriousness of the offense or the need for deterrence"); *Cf. Kimbrough v. United States*, 552 U.S. 85, 109–10 (2007). The Court can account for Ms. Robinson's limited role through a downward variance without disturbing the agreed loss calculation.

The comparison to Roberts makes the point concrete. The sentence of the scheme's architect should not fall below its laborer's. Ms. Robinson respectfully submits that her sentence should be no greater than (and, in fairness, less than) the sentence imposed on Ms. Roberts.

While the Court will sentence Ms. Robinson on the facts of her own case, a variance tracks both national and district sentencing data. For offenders sentenced under U.S.S.G. § 2B1.1 for embezzlement or theft, in Sentencing Zone D, with criminal history category I, over the last five fiscal years (2021–2025), the median sentence in both the Tenth Circuit and the District of Kansas was 18 months. And a majority of Tenth Circuit offenders (60.6%) received less than two years. U.S. Sent'g Comm'n, Interactive Data Analyzer, https://ida.ussc.gov (accessed June 22, 2026). To be sure, the data does not decide this case. It shows only that a sentence below the advisory range is within the norm for defendants like Ms. Robinson.

III.    **Ms. Robinson's history and characteristics. § 3553(a)(1).**

A.    *A 63-year-old, first-time offender with the lowest recidivism risk the data recognize.*

Ms. Robinson has no prior criminal history of any kind: no adult convictions, no juvenile adjudications, not a single prior arrest. PSR ¶¶ 55–61. She is a zero-point offender under U.S.S.G. § 4C1.1. Both facts independently predict an exceptionally low risk of reoffending, and the Commission's own research bears that out for a person with Ms. Robinson's exact profile. *See* U.S. Sent'g Comm'n, *The Past Predicts the Future: Criminal History and Recidivism of Federal Offenders* 19 (2017)

(Criminal History Category I offenders with zero points were rearrested at 30.2%, compared to 46.9% of one-point offenders, and offenders with zero points and no prior contact with the criminal justice system at only 25.7%); U.S. Sent'g Comm'n, *The Effects of Aging on Recidivism Among Federal Offenders* 4 (2017) (offenders in Criminal History Category I who were 60 or older at release had a rearrest rate of just 11.3%, and fraud offenders 60 or older a rate of 12.5%).

The Commission adopted the zero-point reduction in U.S.S.G. § 4C1.1 based on these findings. But that reduction does not account for Ms. Robinson's age. An 18-year-old with zero criminal-history points is not the same as a 63-year-old with zero points. The latter shows a longer span of years without criminal activity. Put simply, Ms. Robinson presents almost no risk that a prison sentence is needed to prevent.

### B.    *Serious and chronic health conditions.*

Ms. Robinson suffers several chronic, admittedly not debilitating, conditions. She has been diagnosed with Type II diabetes (managed with Metformin and a weekly GLP-1 injection), high blood pressure, high cholesterol, and thyroid disease. PSR ¶ 70. She has been treated for anxiety and depression for some twenty years. PSR ¶ 71.

To be sure, these conditions are not unmanageable by the Bureau of Prisons. But they will make imprisonment harsher on Ms. Robinson than on a healthy offender. Her health weighs in favor of a shorter term and a recommendation that she be designated to a facility equipped to manage her care.

### C.     A caregiver upon whom others rely.

Ms. Robinson is the primary caregiver for her husband, a retired paramedic in declining health. PSR ¶¶ 65–67. She also serves as a source of support for her adult son, Ryan, as he works to maintain his sobriety. *Id.* Those who know her describe a person defined by caretaking; a woman who has cared for her sons, her husband, her brothers, and her parents. A custodial sentence will fall hard on the people who depend on her — a real cost the Court may weigh in setting the length of the sentence.

### D.     The circumstances surrounding the offense.

The years of this offense were the hardest of Ms. Robinson's life. Her father died in 2016, followed by her younger brother suffering a fatal overdose in 2020, and then her mother passing in 2022. PSR ¶ 63. Like her younger brother, Ms. Robinson's son struggled for years with addiction and incarceration. PSR ¶¶ 67–68.

This is not an excuse and Ms. Robinson does not offer it as one. Rather, it helps explain how a woman with no history of dishonesty came to make the worst decisions of her life.

## IV.    Acceptance of responsibility.

Ms. Robinson has accepted responsibility for her conduct. She entered a timely guilty plea, sparing the government the burden of trial. PSR ¶¶ 51–52. She has complied with every release condition for nearly a year. PSR ¶¶ 3, 7. Her plea, compliance, and commitment to making restitution are strong evidence that the work of specific deterrence and respect for the law is already well underway. *See Pepper v. United States*, 562 U.S. 476, 491 (2011) (recognizing that post-offense conduct may be highly relevant to the § 3553(a) analysis).

## V.    The nature of the offense and the purposes of sentencing. § 3553(a)(2).

Ms. Robinson does not shirk the seriousness of what she did. She and Ms. Roberts stole money the public entrusted to a court, for several years, by abusing positions of trust. Ms. Robinson understands and accepts the gravity of that harm. She does not suggest that a custodial sentence is unwarranted.

Two things can be true at once. Ms. Roberts made terrible decisions; she is not a terrible person. Her offense is serious; the

purposes of sentencing can be served by a sentence below the advisory range. The seriousness of the offense and respect for the law are reflected in the felony conviction itself, the agreed restitution of $979,962.15, the loss of a forty-year career, and a meaningful period of confinement and supervision.

And the need for specific deterrence is slight. Ms. Robinson is 63, has no record, ended her involvement years ago, accepted responsibility, and has complied fully on release. General deterrence remains a legitimate concern, particularly in financial cases. Here, it is served by a felony conviction, a substantial restitution obligation, and a real custodial sentence. General deterrence does not require the longest available term. And the marginal deterrent value of a within the range, compared to underneath it, is small.

Finally, a shorter sentence facilitates restitution. The sooner she can return to work, the sooner she can begin repayment. And a shorter term means that the public bears a smaller cost — roughly $4,742 a year to supervise her, against roughly $51,711 a year to imprison her. PSR ¶ 113.

## VI.    Supervised release and conditions.

Ms. Robinson asks for a 12-month term of supervised release. She affirmatively welcomes the proposed mental-health-treatment condition; she has expressed a longstanding interest in counseling, PSR ¶ 71, and the condition is well suited to her circumstances. PSR ¶ 109.

## VII.    Restitution, fine, and assessment.

Ms. Robinson asks the Court to set restitution on terms that make repayment realistic — a payment schedule based on her ability to pay, no fine, and a waiver of interest. PSR ¶¶ 77, 79; U.S.S.G. § 5E1.2. She acknowledges that the $100 special assessment is mandatory. 18 U.S.C. § 3013.

## CONCLUSION

Vicki Robinson did something seriously wrong and it became easier the more she did it. While she neither built this scheme nor spent most of its proceeds, Ms. Roberts is not here to downplay the magnitude of the choices she made. She is guilty.

She is also a 63-year-old, first-time offender who poses virtually no risk of reoffending. The architect of the scheme has asked this Court for probation; the woman she recruited asks only for less than whatever the architect receives. She also asks that it recommend to the Bureau of Prisons designation to a facility consistent with her medical needs. She

asks that any term of supervised release include the mental-health-treatment condition, that restitution be ordered as agreed and on terms that make repayment realistic.

Respectfully submitted,

**THE BELL FIRM LLC**

/s/ Branden A. Bell
Branden A. Bell, KS #22618
123 West 8th Street
Suite 206
Lawrence, Kansas 66044
p 785.256.0044
e bbell@bellfirmlaw.com
*Counsel for Vicki Robinson*